UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

WALTER D. WHITE

VERSUS

MICHAEL J. ASTRUE,
COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION

CIVIL ACTION

NO. 09-16-CN

## RULING

Plaintiff Walter D. White seeks judicial review of a final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  In making that final decision, the Administrative Law Judge (ALJ) reached the fifth step of the five-step sequential disability analysis set forth in 20 C.F.R. § 416.920(b)-(f),[1] and found that plaintiff had the residual functional capacity (RFC) to perform other work in the national economy. (Tr. 21.)

## FACTS AND PROCEDURAL HISTORY

On December 3, 2004, the plaintiff protectively filed an application for a period of disability and disability insurance benefits alleging disability beginning July 31, 2004, due to Hepatitis C and a heart condition. (Tr. 80-84-135.)  The application was denied at the initial level and on reconsideration. (Tr. 43-69.)  After a timely request for hearing, the Administrative Law Judge (ALJ) conducted an administrative hearing on September 7, 2007, at which plaintiff, represented by counsel, appeared and testified. (Tr. 341-362.)   On June

---

[1] Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988).

5, 2008, the ALJ issued an adverse decision denying disability insurance benefits finding that plaintiff was not disabled within the meaning of the Act at anytime during the relevant time period. (Tr. 11-12.) The ALJ found that plaintiff had severe impairments of Hepatitis C, occasional back pain, and occasional atypical chest pain, but did not have an impairment or combination of impairments, which met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 16-18, Findings 3 and 4.) The ALJ also found that plaintiff retained the RFC to perform a full range of light work. (Tr. 18, Finding 5.) Because plaintiff's past relevant work was outside of the ALJ's RFC finding, the ALJ found that given plaintiff's age, education, previous work experience, Rule 202.18 of the Medical-Vocational Guidelines directed a finding of "not disabled." (Tr. 21-22, Findings 6-10.) On November 19, 2008, the Appeals Council concluded that no basis existed for review of the ALJ's decision, and therefore, the ALJ's decision became the final decision of the Commissioner, which decision is now before this Court.

## **ANALYSIS**

Judicial review of a final decision of the ALJ denying disability insurance benefits is limited to two inquiries: (1) whether there is substantial evidence in the record as a whole to support the ALJ's findings, and (2) whether the ALJ applied the proper legal standards.[2] In applying the "substantial evidence" standard, the Court must carefully scrutinize the record to determine if, in fact, substantial evidence supporting the decision exists, but the Court may not reweigh the evidence in the record, nor try the issues de novo, nor substitute its judgment

---

[2] Boyd v. Apfel, 239 F.3d 698 (5th Cir. 2001).

for the ALJ's even if the evidence preponderates against the ALJ's decision. Id. Substantial evidence means more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept to support a conclusion. Id. A finding of "no substantial evidence" will be made only where there is a conspicuous absence of credible choices or an absence of medical evidence contrary to the claimant's position. Id.

The burden of proof in disability administrative hearings rests predominately on the plaintiff, and toward that end, the plaintiff and the ALJ conduct a five-step analysis.[3] At step three of the evaluation process, the plaintiff bears the burden of proving that an impairment or combination of impairments meet or equal the criteria of an Appendix 1 Listing.[4] Further, the plaintiff must provide medical findings that support each of the criteria for the equivalent impairment determination.[5]

In the present case, plaintiff argues that he has a "combination of impairments" which are medically equivalent in medical severity to a listed impairment, but does not identify a specific listing to which his impairments are equivalent. Plaintiff further states that while he has a combination of impairments, none of which may meet or equal a listed impairment, each manifests symptoms, signs, and laboratory findings which when combined are medically equivalent in medical severity. Plaintiff also asserts that the medical evidence should include not just findings by medical sources, but should encompass information about

---

[3] Brown v. Apfel, 192 F.3d 492, 497-498 (5th Cir. 1999).

[4] Selders v. Sullivan, 914 F.2d 614, 619 (5th Cir. 1990).

[5] Id.

the medical conditions and their effects, including the claimant's description of impairments. In support of this argument, Plaintiff asserts that Hepatitis C produces several symptoms including a general sick feeling, nausea, vomiting, weakness, diarrhea, abdominal pain, fatigue, and aching joints, which "clearly" prevent him from having the ability to perform work-related activities eight hours a day for five days a week.[6] The ALJ acknowledges that plaintiff suffers from Hepatitis C, but states the plaintiff has not been referred for interferon treatment and continues to drink alcohol. Further, examinations show that his liver is not enlarged and there is no diagnosis of cirrhosis. In February 2005, at the request of the Department of Social Services in San Diego, CA, plaintiff underwent an internal medicine evaluation. With regard to plaintiff's Hepatitis C impairment, the report simply states that it is one of plaintiff's complaints; that plaintiff underwent a liver biopsy 1-1/2 years ago, but did not know the results; he has intermitten elevated liver enzymes but was never told he had cirrhosis of the liver. Further, plaintiff denied a history of swelling of the abdomen or lower extremities and denied a history of treatment with interferon. (Tr. 251.) The record is void of any other medical records regarding plaintiff's diagnosis of Hepatitis C. The only evidence of plaintiff's symptoms are self proclaimed. With regard to plaintiff having a combination of impairments, i.e., Hepatitis C, a heart condition, and back ache, Plaintiff does not identify which Appendix 1 Listing these impairment meet or how his combination of

---

[6] Plf's Brief, p.6.

4

impairments may equal an impairment.[7]  Further, he does not provide any analysis of the relevant law or facts to support his argument.  The Fifth Circuit, in <u>Perez v. Barnhart</u>, found that an argument can be waived due to inadequate briefing.  In <u>Perez</u>, plaintiff's brief was so poorly organized that the Court could not determine what Perez was arguing.[8]  Here, plaintiff does not provide the Court with any analysis of the relevant regulations or evidence to support his contention that his impairments meet or medically equal a listed impairment.  Further, plaintiff fails to suggest or inform the Court as to the listing or listings his impairments meet.  Therefore, the Court finds that plaintiff has failed in his burden at step three of the sequential evaluation.

Plaintiff then argues that while the ALJ alleges to have considered opinion evidence in accordance with SSA regulations and Social Security Rulings,[9] the ALJ did not do as he stated.  Plaintiff argues that the ALJ erred in relying too heavily on the report of Dr. Stephen Wilson and did not give Dr. Francis' findings enough weight.  In his decision, the ALJ stated that after considering all objective and subjective evidence and based on the record as a whole, he concluded and found that plaintiff's subjective complaints were inconsistent with

---

[7] Plaintiff's impairment of Hepatitis C would come under the listing of 5.05 Chronic Liver Disease which includes liver dysfunction such as Chronic Hepatitis C virus, however plaintiff does not provide the Court with any evidence that would indicate that he meets the requirements of this listing. The requirements are set forth in 20 C.F.R. 404, Subpt. P, App. 1, which include specific testing and findings.

[8] <u>Perez v. Barnhart</u>, 415 F.3d 457, 462, n. 4 (5th Cir. 2005)(To the extent that Perez attempted to advance that argument, it is waived due to inadequate briefing. *See*, <u>FED. R. APP. P. 28(a)(9)(A).</u>) *See also*, *Cf.* <u>Vandenboom v. Barnhart</u>, 421 F.3d 745, 750 (8th Cir. 2005) (Court rejected out of hand claimant's conclusory assertion that the ALJ failed to consider whether claimant met listings 12.02 or 12.05C because claimant provided no analysis of the relevant law or facts.).

[9] The ALJ stated that he considered the opinion evidence in accordance with the requirements of 20 C.F.R.

the evidence of record. The ALJ goes on to discuss the various examinations of plaintiff by several physicians including Drs. Francis and Wilson and sets forth his reasons for a) discounting the opinion of Dr. Francis; b) finding that plaintiff's subjective complaints concerning the intensity, persistence and limiting effects of these symptoms were not credible; and c) finding that plaintiff retained the RFC to perform other jobs in the national economy. (Tr. 18-21.)

The ALJ considered the following medical evidence. At the time of plaintiff's alleged onset date of July 31, 2004, he was under the care of Dr. Richard Kempert. In February 2004, Dr. Kempert opined that he had been contacted by the Social Security Administration and it was his opinion that plaintiff was disabled from regular work, but he could perform work which required the lifting of ten pounds regularly and 20 pounds occasionally. (Tr. 278.) Dr. Kempert did not indicate any changes in plaintiff's status through May 2, 2005. Then, on May 3, 2005, Dr. Kempert diagnosed plaintiff with acute traumatic fibrositis of the neck and back; painful trigger spots; intact motor skills and reflexes; normal gait, and negative straight leg raises. (Tr. 269.) Plaintiff does not discuss the findings of Dr. Kempert in his appeal.

Plaintiff underwent an evaluation on February 8, 2005, by Denny H. Lee, M.D. (Tr. 251-254.) Dr. Lee's examination revealed grossly normal findings in plaintiff's upper and lower extremities. Plaintiff demonstrated no chest tenderness, breath sounds were symmetric, no rales and expiratory phase was within normal limits. There was no tenderness to palpation in the midline or paraspinal areas of plaintiff's back, and there was no evidence

of muscle spasm. Dr. Lee further found no evidence of edema or clubbing of the extremities. Dr. Lee concluded that based upon his medical findings, plaintiff could lift/carry 50 pounds occasionally and 25 pounds frequently, could stand, walk and sit for six hours in an eight-hour day with regular breaks. Further, Dr. Lee found that plaintiff had no limitations with fine or gross manipulations.[10]

Plaintiff then underwent a consultive examination by Adeboye Francis, M.D. on October 18, 2007. (Tr. 322-332.) This examination showed plaintiff to be alert and oriented times three, and not in any acute respiratory distress. Plaintiff was able to get on and off the examining table without difficulty. Plaintiff stated to Dr. Francis that he uses a cane but did not bring it with him to the examination. Dr. Francis opined that she did not think that plaintiff's use of a cane appears to be medically necessary. Plaintiff's cervical range of motion was unrestricted in all planes; no reproducible chest pain, and lungs were clear to auscultation. Upon Dr. Francis' cardiac examination, plaintiff revealed no abnormality. Dr. Francis also found that plaintiff had normal curvature of the back with unrestricted spine movement in all major planes, normal gait and coordination. Dr. Francis noted bony point tenderness at the thoracic and lumbar spine levels with positive straight leg raises at 70 to 80 degrees. Plaintiff was able to walk on his heels and toes, had normal muscle tone and strength with good grasp and grip strength. (Tr. 324.)

---

[10] Plaintiff refers to Dr. Lee's report in his appeal a page 9. Plaintiff cites to pages 257-258 of the transcript. Those pages, however, are the Physical Residual Functional Capacity Assessment of Dr. Leonard H. Naiman, performed February 23, 2005.

Dr. Francis then completed a Medical Source Statement of Ability To Do Work-Related Activities, which statement plaintiff relies on heavily. However, Dr. Francis' findings on this statement contradict her findings made during the examination. Dr. Francis' medical source statement indicates that plaintiff could lift up to 10 pounds frequently and 20 pounds occasionally, which is within the ALJ's RFC finding. But then Dr. Francis indicates that plaintiff is unable to sit for more than three hours, stand for five minutes and walk for twenty minutes, and had limitations in the use of his hands, postural limitations, environmental limitations and activity limitations. (Tr. 326-331.) These limitations reported by Dr. Francis do not coincide with her examination findings that a) plaintiff had "normal muscle tone with good grasp and grip strength"; b) plaintiff's cervical range of motion was unrestricted in all planes; and c) plaintiff's spine movement was unrestricted in all major planes. Further, while Dr. Francis reported on the statement that plaintiff could not walk more than 20 minutes in an eight-hour workday, her report from her examination revealed that plaintiff had a normal gait and coordination, and was able to walk on his heels and toes. It should also be noted that Dr. Francis checked a box indicating that plaintiff requires the use of a cane to ambulate, then stated that he can walk about 5 blocks without the use of a cane. Dr. Francis also checked a box indicating that plaintiff's use of a cane is not medically necessary. The ALJ discounted Dr. Francis' functional assessment as being inconsistent with her own reported examination findings, since it seemed that her assessment was based upon

plaintiff's subjective complaints.[11] Plaintiff relies on Dr. Francis' Medical Source Statement to support his argument, however, he does not discuss the rest of the medical records of Dr. Francis, which clearly contradict the medical source statement.

Plaintiff was then examined by Dr. Stephen M. Wilson, a board certified orthopaedic surgeon, on April 14, 2008. (Tr. 333-340.) The plaintiff stated to Dr. Wilson that he had been treated in California for bad discs in his neck and back, and that his pain in his neck and back continued to such an extent that he had to quit working. He went on to say that now he gets pain radiating to the posterior aspect of his thighs, and that the pain across his back and neck is fairly severe. Plaintiff complained to Dr. Wilson of pain on palpation in the posterior neck area and complained of pain on minimal palpation across the lumbar region. Dr. Wilson's examination, however, failed to reveal any type of swelling, inflammation or muscle spasm. He found plaintiff to have good range of motion in the neck with some pain on forward flexion at 20 degrees. Upon examination, plaintiff complained of pain in the lower back when he was performing heel and toe walks, and pain in his back when he performed forward flexes at 40 degrees. Dr. Wilson found no evidence of muscle spasm, muscle weakness or muscle atrophy in the upper extremities. There was no gross deformity or decreased range of motion in any joints of the upper extremities. With regard to the lower extremities, Dr. Wilson found no evidence of muscle atrophy or weakness and no palpable muscle spasm, and no gross joint deformity. Plaintiff had good strength on dorsiflexion of

---

[11] See, Martinez v. Chater, 64 F.3d 172, 176 (5th Cir. 1995)(an ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.)

the feet and toes and straight leg raising test was negative bilaterally in the sitting position. X-rays taken of plaintiff's cervical spine and lumbosacral spine showed no evidence of any type of fracture or dislocation and his alignment of his vertebrae was satisfactory. Dr. Wilson's conclusion was that plaintiff had an essentially normal orthopaedic examination and would not place any orthopaedic restrictions on him at this time, and that he could return to any type of activity he desires to perform. Dr. Wilson also felt that the plaintiff's symptomatology was highly exaggerated. Dr. Wilson also completed a Medical Source Statement of Ability To Do Work-Related Activities. He reported that plaintiff had no functional limitations which would preclude him from performing a full range of light work. (Tr. 335-339.) Plaintiff contends that Dr. Wilson's findings on his medical source statement are in direct contradiction to those findings of the ALJ's. Again, the plaintiff looks at only one medical source statement of Dr. Wilson and ignores the other records, which show that plaintiff's functional capacity is not as debilitating as plaintiff alleges.

The ALJ also considered plaintiff's own testimony in making his RFC assessment. Plaintiff testified that he tried going back to maintenance work, but the fatigue and the chemicals affected him. He would do the job for 20 minutes and had to rest for a half hour to 45 minutes due to his Hepatitis C. (Tr. 347.) When asked what other impairments prevented him from working, plaintiff stated that he had a bad knee. This is the first time plaintiff mentions that he has difficulty with his knees or pain in his knees. Plaintiff does not allege in his application that he became disabled due to any type of knee impairment. He goes on to say that he gets tired and fatigued and can only walk about a block and a half. He

also stated he had pains in his lower back and has pain every day, but does not take any prescription medication, only some aspirin.[12] He told the ALJ that he could only sit about ten minutes because his knee starts tightening up and getting numb and he would have to stretch it out. Plaintiff testified that he could only stand about five minutes because his knee would start shaking like it was going to give out on him. (Tr. 351-352.) When asked by his counsel if he had any problems with using his hands, gripping and carrying objects, plaintiff testified "Not often. Sometimes I can't tighten up on them." (Tr. 361.) Again, plaintiff does not allege any impairment concerning his grip or hands in his application.

     Plaintiff contends that the ALJ relied solely upon the report of Dr. Wilson and disregarded the findings of Dr. Francis. As stated above, plaintiff argues that the effects of Hepatitis C alone produces a general sick feeling, nausea, vomiting, weakness, diarrhea, abdominal pain, fatigue and aching joints, and that these symptoms prevent plaintiff from performing work-related activities, and contends that Dr. Francis' findings supports his argument. Plaintiff, however, points only to Dr. Francis' completed Medical Source Statement and does not take into consideration the whole of Dr. Francis' medical records, which show that when examined plaintiff could ambulate without difficulty, his cervical range of motion was unrestricted; normal curvature of the back with unrestricted spine movement; normal gait and coordination; and normal muscle tone and strength with good grasp and grip strength. Further, plaintiff does not indicate where in the medical records

---

[12] Griego v. Sullivan, 940 F.2d 942, 945 (5th Cir. 1991)(use of only over-the-counter pain relievers, such as aspirin, suggests that the severity of the pain is not so grate as to preclude light exertional type work.)

plaintiff's treating physicians indicate that he suffers from the symptoms he suggests he has from the Hepatitis C. The Court disagrees with plaintiff's assertion that the ALJ relied solely upon Dr. Wilson's opinion. A reading of the ALJ's decision indicates that he did not base his decision solely upon Dr. Wilson's reports since the ALJ sets forth in great detail the findings of all of plaintiff's treating and consulting physicians, including Dr. Francis and Dr. Wilson and his reasons for discounting Dr. Francis' findings. The Fifth Circuit has held that when there are conflicting medical reports from examining physicians, the ALJ is to weigh the various physician reports and give some assessments reduced weight when they are not supported by medically acceptable clinical or laboratory diagnostic techniques or otherwise unsupported by the evidence.[13] The Fifth Circuit has also stated that the ALJ has the sole responsibility for determining a claimant's disability status and that "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."[14] Further, treating physician's opinions are not conclusive and can be assigned little or no weight when good cause is shown.[15] The Court's function is to review whether the ALJ's decision is supported by substantial evidence, not to independently reweigh the evidence and consider

---

[13] Spellman v. Shalala, 1 F.3d 357, 364 (5th Cir. 1993); Scott v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

[14] Newton v. Apfel, 1209 F.3d 448, 455-456 (5th Cir. 2000) citing Paul v. Shalala, 29 F.3d 208, 211 (5th Cir. 1994).

[15] "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.", Id., citing Brown v. Apfel, 192 F.3d 492, 500 (5th Cir. 1999); Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994).

whether it would rule as the ALJ did. Here, the ALJ rejected Dr. Francis' opinion because the evidence supported a contrary conclusion, and the Court agrees.

Further, the ALJ found that plaintiff's complaints of severe limitations were not credible. The Fifth Circuit has held that the judgment as to the credibility of testimony is the sole province of the ALJ.[16] The ALJ's credibility determination is entitled to considerable deference.[17] Furthermore, the regulations provide that a claimant's subjective complaints are considered credible only to the extent that the record evidence supports them. After considering both the plaintiff's testimony and complaints, and the record as a whole, the ALJ found the plaintiff's credibility to be lacking and the Court will give considerable deference to that determination.

Considering the above contradictions in Dr. Francis' medical records and findings, and the other medical opinions and records, the Court finds that the ALJ properly discounted Dr. Francis' medical opinion. The Court further finds that the objective medical findings and assessments of record support the ALJ's conclusion that plaintiff's subjective complaints were not credible and that plaintiff, therefore, retains the RFC to perform a full range of light work.[18]

---

[16] Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991).

[17] Falco v. Shalala, 27 F.3d 160, 164 (5th Cir. 1994).

[18] See, Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002) (The evaluation of a claimants subjective symptoms is also a task particularly within the province of the ALJ, who has had an opportunity to observe whether a person seems to be disabled.)

After finding that plaintiff had the RFC to perform a full range of light work, the ALJ considered plaintiff's age, education, work experience in conjunction with the Medical-Vocational Guidelines and found that there are jobs existing in significant numbers in the national economy that plaintiff can perform. Plaintiff does not discuss this finding, only avers that his impairments render him unable to perform substantial gainful activity on a regular and continuing basis.

Therefore, the Court finds that there is substantial evidence in the record as a whole to support the ALJ's findings that plaintiff is not disabled and that the ALJ followed the proper legal standards in making this determination.

Accordingly,

**IT IS ORDERED** that the ALJ's decision be affirmed, that plaintiff's appeal be dismissed, with prejudice, and judgment will be entered accordingly.

Signed in chambers in Baton Rouge, Louisiana, December 10, 2009.

**MAGISTRATE JUDGE CHRISTINE NOLAND**